# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SANDRA NORWOOD,

               Plaintiff,

-vs-                               Case No.  6:05-cv-1488-Orl-JGG

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____

## MEMORANDUM OF DECISION

       Plaintiff Sandra Norwood ["Norwood"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for disability insurance benefits. *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

       On December 15, 2003, Norwood protectively filed a claim for disability insurance benefits, claiming disability as of March 1, 2002.  R. 53-55.  On June 11, 2005, the Honorable Arthur L. Conover, Administrative Law Judge ["ALJ"], held a hearing on Norwood's claim in Orlando, Florida.  R. 152 - 173.[1]  Non-attorney Robert L. Hicks represented Norwood at the hearing.  R. 11, 154.  The ALJ heard testimony from Norwood and Lisa Goudy, vocational expert ("VE").

---

[1] Norwood appeared and testified in Orlando.  The ALJ presided from Charleston, West Virginia by videoconferencing.  The vocational expert testified in Charleston.  R. 11.

On July 26, 2005, the ALJ issued a decision that Norwood was not disabled and not entitled to benefits.  R. 8-18.  Following a review of the medical and other record evidence, the ALJ found that Norwood could not perform her past relevant work as an office manager.  R. 15, Finding 7.  The ALJ found that Norwood nevertheless retained the residual functional capacity ["RFC"] to perform the "broad world of work" that is sedentary.  R. 13, 16, 17, Finding 6. Applying the Medical-Vocational Guidelines, the ALJ concluded that Norwood was not disabled. R. 18, Finding 11.

The Appeals Council denied review on August 19, 2005.  R. 4-6.  On October 6, 2005, Norwood timely appealed the Appeals Council's decision to the United States District Court. Docket No. 1.  On July 7, 2006, Norwood filed in this Court a memorandum of law in support of her appeal.  Docket No. 15.  On September 5, 2006, the Commissioner filed a memorandum in support of her decision that Norwood was not disabled.  Docket No. 16.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Norwood assigns four errors to the Commissioner.  First, Norwood claims that the Commissioner erred in failing to accord controlling weight to the RFC determination by Norwood's treating physician, and that the ALJ's RFC determination was not support by substantial evidence.  Second, Norwood claims that the Commissioner erred because the hypothetical questions asked of the VE failed to include the limitations imposed by Norwood's treating physician.  Third, Norwood claims that the Commissioner erred in failing to properly

apply the appropriate pain standard.  Lastly, Norwood argues that the ALJ's finding that Norwood was "not entirely credible" was erroneous.

The Commissioner argues that substantial evidence supports her decision to deny disability.  First, the Commissioner argues that the ALJ's decision to only accord "some weight" to the treating physician's opinion was supported by the lack of corroborating medical evidence and examinations.  Docket No. 16 at 8-9.  Second, the Commissioner argues that the ALJ appropriately assessed Norwood's RFC, and that the hypothetical questions based on that RFC, were proper.  Docket No. 16 at 11.  Third, the Commissioner argues that the ALJ properly articulated his reasons for discrediting Norwood's testimony regarding her pain and that he appropriately applied controlling law.  Docket No. 16 at 11-14.

## III.   THE STANDARD OF REVIEW

### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if

the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.     REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks

substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.     REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council);

*Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the

need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and

appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the
Commissioner of Social Security, but only upon a showing that there is new
evidence which is material and that there is good cause for the failure to incorporate
such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is

new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that

there is a reasonable possibility that it would change the administrative result; and 3.) there is good

cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 -

92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547,

1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v.

Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the

Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at

1095.  With a sentence-six remand, the parties must return to the district court after remand to file

modified findings of fact. *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending

remand, and does not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.*  In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an

IV.   **THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

A.   **DEVELOPING THE RECORD**

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and

---

extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits.  *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well

as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

**B.     THE FIVE STEP EVALUATION**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§

404.1520,  416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments which significantly limit his or her physical or mental ability to do

basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R.

§ 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's

impairments do not prevent him or her from doing past relevant work, she is not disabled.  20

C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional

capacity, age, education, and past work) prevent him or her from doing other work that exists in

the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently

severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must

consider any medically severe combination of impairments throughout the disability determination

process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole

person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v.*

*Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the

reviewing court that the ALJ has considered all alleged impairments, both individually and in

-8-

combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR  82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### C.   OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional

-10-

impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

### D.     TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician.  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the

other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

-12-

making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner.  20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.   PAIN

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1529.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be

expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## F.    CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349,

-14-

1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote

v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)

(although no explicit finding as to credibility is required, the implication must be obvious to the

reviewing court).

### G.   MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine

whether the claimant is disabled. 20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143,

146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required

to order a consultative examination unless the record establishes that such an examination is

necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206,

1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order

such an evaluation may be reversible error). Under the regulations, however, the ALJ may

determine that a consultative examination or other medical tests are necessary. 20 C.F.R.

§ 416.917 (1998).

## V.   <u>APPLICATION AND ANALYSIS</u>

### A.   THE FACTS

At the time of the hearing, Norwood was forty-seven years of age, and had graduated from

high school in 1976. R. 82, 156, 157. Prior to March 1, 2002, the alleged onset date of disability

(R. 53), Norwood had been employed as a data entry person, an office manager and an operations manager.  R. 71, 158-159.  When performing the job of office manager, Norwood stood and walked four hours a day, frequently lifted 25 pounds, and had to lift boxes of supplies and files weighing up to 50 pounds.  R. 71.

On May 29, 2002, Norwood began seeing Dr. Salma Hitawala for problems associated with Type II diabetes and hypothyroidism.  R. 123.  Dr. Hitawala noted that Norwood had poor control over her diabetes.  *Id*.  Dr. Hitawala prescribed Glucotrol and Synthroid.  *Id*.  Two days later, Norwood's blood sugar measured 228 (normal being 65-109).  R. 121.  Norwood's blood sugar measured 428 on November 25, 2002, (R. 121), and 232 on December 17, 2002.  R. 120.

On April 10, 2003, Dr. Hitawala prescribed Insulin and Glucophage.  R. 119.  It was on this visit that Norwood first complained of right thumb nail pain after working in her yard.  *Id*.  At her next visit on July 17, 2003, Norwood's blood sugar level was 259.  R. 118.

On July 30, 2004, Norwood began seeing Dr. Jeffrey Peele for her complaints of numbness and tingling in her hands and feet. R. 148-50.  Norwood reported that her last two toes were numb, and she experienced occasional numbness in her hands.  R. 148.  On physical examination, Dr. Peele noted diminished sensations in the lateral two digits of Norwood's lower extremities.  *Id*. At that time Norwood's blood sugar was uncontrolled, and Dr. Peele advised Norwood to continue with the medications prescribed by Dr. Hitawala.  *Id*.  Dr. Peele noted Norwood's  history of peripheral neuropathy.  *Id*.  Dr. Peele's assessment was IDDM [insulin-dependent diabetes mellitus], uncontrolled (primary), hypercholesterolemia, and HTN [hypertension].  *Id*.

Norwood followed up with Dr. Peele on September 16, 2004.  R. 147.  At that time, Norwood's blood sugar was just under 200, but had been in the 400s.  *Id.*  At her subsequent follow up visit on November 19, 2004, Norwood complained of tingling and numbness bilaterally. R. 146.  On March 11, 2005, Norwood again complained of tingling and numbness in her hands and feet. R. 145.  A sensory exam revealed decreased sensation in hands and feet,  reflexes bilaterally symmetrical, Babinsky negative, plantars downgoing bilaterally, cerebellar signs absent, gait normal, tremors absent.  *Id.*  Additionally, a Romberg test was normal.  *Id.*

On March 11, 2005, Dr. Peele completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)."  R. 142-144.  Dr. Peele stated that because of Norwood's diminished sensations in hands and feet with disequilibrium, she was limited to lifting/carrying less than ten pounds, for a maximum of 30 minutes in an eight-hour work day. R. 142.  Dr. Peele further stated that, because of her diminished sensation in her feet due to peripheral neuropathy and her NIDDM [non-insulin dependent diabetes], Norwood was limited in standing and walking to 30 minutes and five minutes without interruption.  R. 142-43.  Norwood was not limited in sitting, but could never climb or balance.  R. 143.  Dr. Peele also stated Norwood could not handle, feel, push and pull due to poor sensitivity caused by the peripheral neuropathy.  R. 143.

**B.    THE ANALYSIS**

**1.    <u>Finding that Norwood Was Not Entirely Credible</u>**

Norwood argues that the ALJ failed to consider her full testimony when he found that she was "not entirely credible."  R. 17, Finding 5.  The ALJ obviously found Norwood credible in her

description of her daily activities, which he gave more weight to than her treating physician's description.  R. 15.  The testimony that the ALJ found not entirely credible was her testimony that she cannot sit for longer than 15 minutes at a time, stand longer than five minutes at a time, or walk farther than a quarter block.  The ALJ found these limitations were inconsistent with other testimony.  R. 15.

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  In this case, substantial evidence supports the ALJ's limited rejection of Norwood's testimony.  At one point, Norwood testified that she spent most of the day sitting, getting up occasionally for brief periods of time.  R. 161.  At another point, she testified that she could only sit 15-30 minutes at a time because various parts of her body go to sleep.  R. 163.  Similarly, Norwood's contention that she could only stand five minutes at a time (R. 163) is inconsistent with her testimony that she would do various household activities, usually 15 minutes at a time.  R. 161.  Not only is Norwood's testimony on these issues inconsistent, as noted by the ALJ, her physicians never imposed any type of limitations during the period of her insured status.

### 2.     Failure to Accord Controlling Weight to Dr. Peele's Opinion

The ALJ gave "some weight" to Dr. Peele's March 11, 2005, assessment of Norwood's restrictions.  R. 14.  Norwood points to three reasons why the ALJ did not give Dr. Peele's opinion controlling weight: 1) Dr. Peele lacks specialized training in endocrinology; 2) Dr. Peele treated Norwood on only four occasions prior to issuing his opinion; and 3) Dr. Peele's opinions were not fully supported by medical evidence.   Norwood argues that no physician offered a contrary opinion to Dr. Peele, and that the ALJ's RFC determination was not based on substantial evidence.

As stated above, absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner.  20 C.F.R. § 404.1527(e).

The ALJ specifically noted that Dr. Peele's examinations of Norwood did not reveal any evidence of disequilibrium.  R. 14.  Indeed, Norwood tested negative on the Romberg test (R. 145), which is a neurological test to detect poor balance.  The lack of specialized training and limited treatment also are proper subjects for consideration.  The ALJ, therefore, had sufficient cause to discount Dr. Peele's opinion.

-19-

Norwood's argument that substantial evidence did not support the ALJ's determination is unpersuasive.  In particular, Norwood attacks the ALJ's determination that she could lift twenty pounds occasionally and ten pounds frequently.  Docket 15 at 10.   The ALJ, however, stated that he gave more weight to the claimant's description of her abilities than he gave to Dr. Peele's assessment.  R. 15.  Norwood testified that she could lift 20 pounds comfortably.  R. 15, 163.  Norwood also testified that she could lift a gallon of milk (R. 166), which weighs approximately 8.5 pounds.  The ALJ clearly found Norwood's testimony on this subject to be credible and her testimony constitutes substantial evidence.

Similarly, Norwood attacks the ALJ's determination that Norwood could perform "occasional fingering" as being unsupported by substantial evidence.  Fingering is one aspect of being able to perform fine and gross movements.  The regulations provide that

> To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00 (B)(2)(c).  Norwood testified that she is able to smoke of half pack of cigarettes a day (R. 159), take care of personal hygiene (R. 162), wipe dishes and place them in the dishwasher (R. 161), measure her blood sugar three times a day (R. 165), and take insulin twice daily (R. 165).  Norwood's testimony regarding her activities provides substantial evidence for the ALJ's determination that she has the RFC to occasionally finger.

-20-

### 3.      Evaluation of Norwood's Pain

Norwood argues that the ALJ failed to correctly apply the pain standard.  Norwood testified that she could only stand for five minutes due to pain.  R. 162.  She also testified that the pain in her hands is so severe that it will wake her from sleep.  R. 164.  Norwood also testified that she has pain shooting up into her hips if she sits too long.  R. 165.  Norwood contends that her peripheral neuropathy is so severe that it can be reasonably expected to give rise to the pain that she describes.  See Docket 15 at 16.  Norwood specifically points to the fact that she was prescribed Lorcet and Neurontin, which are pain medications.  *Id*.

The mere identification of a medical condition such as peripheral neuropathy does not establish the severity of pain experienced.  Instead,  a variety of factors are considered in evaluating the intensity and persistence of symptoms, including daily activities, type and dosage of medication, treatment history, medical findings, and physician's opinions.  20 C.F.R. § 404.1529(c).

The ALJ considered all of the facts and medical evidence surrounding Norwood's claims of pain, including Norwood's pain medications.  R. 13.  As stated above, the ALJ rejected Norwood's claims of disabling pain based on Norwood's  inconsistent testimony.  Further, Norwood only once complained to her doctor regarding thumb nail pain after working in her yard (R. 119), and once of mandibular pain after having a tooth pulled.  R. 118.  The medical records fail to support Norwood's claims of disabling pain.

-21-

**4.**     **The Hypothetical Questions Posed to the VE**

Norwood claims that the Commissioner erred because the hypothetical questions asked of the VE failed to include the limitations imposed by Dr. Peele. Docket 15 at 13. According to Norwood, the main problem with the hypothetical question to the VE was the assumption that the hypothetical person could engage in occasional fingering. Docket 15 at 14. As stated above, substantial evidence supports the ALJ's determination that Norwood can perform work that requires occasional fingering. The ALJ did not err in including occasional fingering in the hypothetical questions posed to the VE.

**VI.**     **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter a separate judgment and close the case.

**DONE AND ORDERED** this 26th day of February, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and to:


Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Selisa M. Wright, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia     30303-8920

The Honorable Arthur L. Conover
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Charleston Fed Center
500 Quarrier St., Ste 100
Charleston, WV 25301